**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE CHARLES MACHINE WORKS, INC., an Oklahoma Corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-13-651-M ) |
| VALLEY DITCH WITCH, INC., a Texas Corporation, d/b/a DITCH WITCH OF TEXAS, | ) ) ) ) |
| Defendant. | ) |

**ORDER**

Before the Court is defendant Valley Ditch Witch, Inc.'s ("defendant") Motion to Dismiss Plaintiff's Original Complaint Pursuant to FRCP 12(B)(2) & (3) & (6) and 12(C), filed September 24, 2013. On October 14, 2013, plaintiff filed its response, and on October 21, 2013, defendant filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.    Introduction

The Charles Machine Works, Inc. ("plaintiff") is in the business of manufacturing and selling Ditch Witch® utility tractor parts and equipment through a worldwide network of independent dealers. Plaintiff is an Oklahoma corporation with its principal place of business in Oklahoma, where its manufacturing facilities and company headquarters are located. Plaintiff and defendant, a Texas corporation, entered into an agreement allowing defendant to establish a dealership in Texas and sell plaintiff's parts and equipment within certain regions in Texas. This relationship continued for decades and was subject to contract renewals throughout.

The dispute underlying this litigation emanates from the last Dealership Agreement the parties signed in 2010, which was in effect until June 30, 2013. The Dealer Agreement referenced a separate document ("the Standard Provision"), which included choice of law and forum clauses and

1

a provision allowing for non-renewal without cause. On May 29, 2013, plaintiff issued a letter to defendant stating that it does not intend to renew the Dealer Agreement. The parties disagreed on whether plaintiff may not renew without cause and/or if plaintiff had cause not to renew. As a result, plaintiff filed this instant action seeking declaratory relief.[1]

II. <u>Personal Jurisdiction</u>

Defendant contends that this Court lacks personal jurisdiction over it. When a court's jurisdiction is contested, the plaintiff has the burden of proving that jurisdiction exists. *See ASAT Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). "Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* at 1056–57.

> To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry.

*Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (internal citations omitted).

> The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant so long as there exist minimum contacts between the

---

[1] Plaintiff's request for declaratory relief includes:
  (a) Adjudge and declare that [plaintiff's] decision to not renew the Dealer Agreement is authorized by the terms of the Dealer Agreement and Oklahoma law . . . .
  (b) Adjudge and declare that [plaintiff] may lawfully not renew the terms of the Dealer Agreement without cause and that such non-renewal is in compliance with the terms of the Dealer Agreement and Oklahoma law . . . .
  (c) Alternatively, adjudge and declare that [plaintiff] has cause to allow expiration of the Dealer Agreement, and to not renew it, precluding [defendant] from recovery of damages or any other form of relief.
Compl. 6-7.

defendant and the forum State. The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a non-resident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state.

*Id.* (internal quotations and citations omitted). In the case at bar, plaintiff asserts that this Court has specific jurisdiction over defendant.

> A specific jurisdiction analysis involves a two-step inquiry. First [a court] must consider whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. Second if the defendant's actions create sufficient minimum contacts, [a court] must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.

*Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (internal quotations and citations omitted). "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from actions by the defendant *himself* that create a substantial connection with the forum state." *Id.* at 1076 (internal quotations and citation omitted) (emphasis in original). Further, whether a defendant has the required minimum contacts must be decided on the particular facts of each case. *See id.*

Having carefully reviewed plaintiff's complaint, as well as the parties' submissions, the Court finds that it does have personal jurisdiction, particularly specific personal jurisdiction, over defendant. Specifically, the Court finds that defendant maintained a relationship with plaintiff, an Oklahoma resident, for over thirty (30) years serving as a dealer of parts and equipment that defendant manufactured in Oklahoma, defendant purchased these Oklahoma manufactured products totaling in the amount of millions of dollars over the years, and the terms of the Dealer Agreement granted plaintiff some oversight of defendant's operations (such as requiring plaintiff's approval for any change in ownership of defendant's business). In addition, review of the record shows that

defendant's personnel have made several trips over the years to Oklahoma for training and conferences in furtherance of this business relationship. Accordingly, the Court finds defendant has sufficient minimum contacts with the State of Oklahoma.[2]

Additionally, the Court finds that exercising specific personal jurisdiction over defendant does not offend traditional notions of fair play and substantial justice. In reaching this conclusion, the Court has considered the following five factors: (1) the burden on defendant, (2) Oklahoma's interest in resolving the dispute, (3) plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering the fundamental substantive social policies. *See Intercon, Inc.*, 205 F.3d at 1249. After reviewing the first factor carefully, the Court finds defendant will not be unduly burdened. While defendant will have to travel to Oklahoma in order to appear before the Court, with modern day technology, the majority of the work in pursuing this litigation can be done from Texas. Second, the Court finds that Oklahoma has a manifest interest in resolving the instant dispute. Defendant has engaged in a long term contractual business relationship with an Oklahoma entity to sell Oklahoma manufactured products worth millions of dollars over the years. The Court finds that clearly Oklahoma would have an important interest in providing a forum in which its residents can seek redress for disputes that arise from such relationship. Third, the Court finds plaintiff's interest in receiving convenient and effective relief would not be impacted. This factor, therefore, weighs in favor of defendant as plaintiff has provided no reason why it could not receive convenient and effective relief in Texas. Fourth, in terms of efficiency, the Court finds that this factor does not weigh in favor of either party.

---

[2] In addition, the Standard Provisions, which, for reasons set forth below, the Court finds should be incorporated into the Dealer Agreement, establishes Oklahoma as the choice of law and the place of venue. *See* Compl. Ex. 1, at p.10, K. These clauses at the very least add to the notion that defendant should anticipate being haled into an Oklahoma court.

Plaintiff and defendant's witnesses are located in Oklahoma and Texas; the products sold were manufactured in Oklahoma by an Oklahoma entity and sold in Texas by a Texas entity; and the parties' dispute whether Oklahoma or Texas law applies. Accordingly, the Court finds that this factor is neutral and does not favor either party. Finally, the Court finds no reason why Oklahoma exercising jurisdiction in this case would impact the substantive policy issues of other states. Thus, the Court finds that exercise of personal jurisdiction over defendant is reasonable and would not offend traditional notions of fair play and substantial justice.

Accordingly, the Court has personal jurisdiction over the defendant.

### III. Venue

Defendant also moves the Court to dismiss or, in the alternative, transfer the case to Texas[3] under 28 U.S.C. § 1406(a) alleging venue in this Court is improper. Title 28 U.S.C. § 1406(a) provides a court with means to transfer or dismiss a case "laying venue in the *wrong* division or district." 28 U.S.C. § 1406(a) (emphasis added). The Court, however, finds that § 1406(a) is inapplicable in this case because venue is proper under 28 U.S.C. § 1391(b)(1).[4] Notwithstanding, even if the Court construes defendant's request as a motion to transfer pursuant to 28 U.S.C. § 1404(a), the Court denies such request. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The purpose of § 1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and the

---

[3] After plaintiff filed the instant case in this Court, defendant filed a separate law suit against plaintiff in a Texas court. Pursuant to plaintiff's motion to transfer, the Texas court has transferred defendant's case to this Court. The Texas court's order transferring defendant's case to this Court does not provide the court's reasons for transferring the case.

[4] Section 1391(b)(1) provides that venue is proper in any "judicial district in which any defendant resides". A corporation "shall be deemed to reside in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Here, the Court has already determined that it has personal jurisdiction over defendant. Accordingly, venue in this Court is proper.

public against unnecessary inconvenience and expense." *Jacobs v. Lancaster*, 526 F. Supp. 767, 769 (W.D. Okla. 1981) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19 (1960)). Section 1404(a) is intended to "place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations omitted). As the moving party, defendant bears the burden of proving that (1) the action could have been brought in the alternate forum, (2) the existing forum is inconvenient, and (3) the interests of justice are better served in the alternate forum. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).

> Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (citation and internal quotation marks omitted). "The presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." *Stewart*, 487 U.S. at 29. "[T]he venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *Pendleton Enters., Inc. v. Iams Co.*, 851 F. Supp. 1503, 1504 (D. Utah 1994) (quoting *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989)) (internal quotation marks omitted).

In the case at bar, the Court finds that defendant has failed to meet its burden of establishing that a transfer is warranted. While it is true that defendant's sales and services took place in Texas, it is also true that these products were manufactured in Oklahoma, that defendant purchased these items from Oklahoma for many years, that it attended several training sessions in Oklahoma, and

that the Dealer Agreement gave plaintiff some control over defendant's business decisions. Further, while defendant contends the forum clause is not included in the Dealer Agreement[5] and that even if it was included it is unenforceable[6], the Court finds the forum clause establishing Oklahoma as the

---

[5] Defendant contends that the forum clause is inapplicable because it is not included in the Standard Provision which was not attached to the 2010 Dealer Agreement signed by the parties. However, an analysis under both Texas law and Oklahoma law yields the same conclusion – that the Standard Provision should be incorporated into the Dealer Agreement. Courts in the State of Oklahoma have held that a contract can incorporate an extrinsic document by reference. *See Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1005 (10th Cir. 2013) (recognizing same); *see High Sierra Energy, L.P. v. Hull*, 241 P.3d 1139, 1144 (Okla. Civ. App. 2010) (incorporating extrinsic document); *Monkey Island Dev. Auth. v. Staten*, 76 P.3d 84, 88 (Okla. Civ. App. 2003) (incorporating); *see also Hirsch Holdings, L.L.C. v. Hannagan-Tobey, L.L.C.*, 193 P.3d 970, 973 (Okla. Civ. App. 2008) (In the search for the parties' intent, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.") (quoting Okla. Stat. tit. 15, § 158)). Similarly, Texas courts have also recognized such incorporation by reference:
> Unsigned documents may be incorporated into the parties' contract by referring in the signed document to the unsigned document. The language used to refer to the incorporated document is not important as long as the signed document "plainly refers" to the incorporated document. Documents incorporated into a contract by reference become part of that contract. When a document is incorporated into another by reference, both instruments must be read and construed together.

*Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App. 2013) (internal citations omitted). The Court finds that the Standard Provision, which includes the forum and choice of law clauses, is clearly referenced in the Dealer Agreement, which plaintiff signed. In addition, plaintiff provided and referenced this same document to defendant as recent as 2002 in their thirty (30) plus year long business relationship. *See* Pl.'s Resp. in Opp. to Def.'s M. to Dismiss Ex. 5. Accordingly, the Court finds that the Standard Provision is incorporated by reference into the Dealer Agreement and, thus, is applicable.

[6] Defendant also asserts that the forum clause is unenforceable. A forum clause is "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). "[W]hen venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory." *Am. Soda LLP v. U.S. Filter Wastewater Gp., Inc.*, 428 F.3d 921, 927 (10th Cir. 2005). Any "party resisting enforcement of a forum selection provision carries a heavy burden of showing that provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992). Having carefully reviewed the parties' submissions, the Court finds the forum clause is enforceable. The Dealer Agreement plainly refers to the Standard Provision. *See* Compl. Ex. 5, at 10. The forum clause is carefully separated as a separate item and listed with clear mandatory language. *Id.* Ex. 7, at 10. Further, as set forth above, the Standard Provision document

parties' agreed place of venue is enforceable and is a significant factor that outweighs any § 1404(a) factors asserted by defendant. Accordingly, the Court finds that defendant has not met its burden to warrant a transfer.

IV.   Motion to Dismiss and/or Motion for Judgment on the Pleadings

Defendant moves the Court to dismiss plaintiff's request for declaratory relief pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(c). When reviewing a motion for judgment on the pleadings under Rule 12(c), the Court applies the same standard that applies to a Rule 12(b)(6) motion. *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a).

> It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute that affects the behavior of the defendant toward the

---

was in existence at the time defendant signed the 2010 Dealer Agreement and defendant was aware of its existence. It is also hardly unreasonable for an Oklahoma entity with a principal place of business in Oklahoma which does inter-state business to require its business partners to agree to litigate issues in an Oklahoma forum. Lastly, the Court finds defendant has not shown that enforcement of the forum clause is contrary to the public policy of the chosen forum state. Accordingly, the Court finds that defendant has not met its heavy burden of showing that the forum clause is unenforceable.

plaintiff. . . . a plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future.

*Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994).

Under Oklahoma[7] statutory law, "contracts are unlawful which are . . . . [c]ontrary to an express provision of law . . . . [or] [c]ontrary to the policy of express law, though not expressly prohibited[.] Okla. Stat. tit. 15, § 211. "'Unlawful' means ineffective in law, *see Conine v. Leikam*, 570 P.2d 1156, 1159 (Okla. 1977), or void and unenforceable." *Sabine Corp. v. ONG, Inc.*, 757 F. Supp. 1157, 1181 (W.D. Okla. 1989). Under the version of the Fair Practices of Equipment Manufacturers, Distributors, Wholesalers and Dealers Act ("the Act") in effect at the time the parties signed the Dealer Agreement, a supplier is prohibited from terminating or failing to renew a dealer agreement without cause. Okla. Stat. tit. 15, § 245A.5. In addition, a supplier may not require a dealer to assent to a release or a waiver which would relieve the supplier from liability imposed by the act. Okla. Stat. tit. 15, § 245A.10.

Having carefully reviewed the parties' submissions, the Court finds that defendant's request to dismiss all three of plaintiff's requests for declaratory relief should be denied. Plaintiff asserts

---

[7] Generally,
> Where jurisdiction is based on diversity as it is here, the substantive law of the forum state, including that state's choice of law rules, apply. *Moore v. Subaru of America*, 891 F.2d 1445, 1448 (10th Cir. 1989) . . . . In Oklahoma, the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless the law of the chosen state would be contrary to a fundamental policy of the State of Oklahoma. *See, Moore*, 891 F.2d at 1449, citing Oklahoma authorities and quoting the *Restatement (Second) of Conflict of Laws* § 187, "Law of the State Chosen by the Parties"; *Williams v. Shearson Lehman Brothers, Inc.*, 917 P.2d 998, 1002 (Okla. Civ. App. 1995) (parties' contractual choice of law should be given effect as written unless something in the record demonstrates otherwise).

*Pre-Paid Legal Servs., Inc. v. Worre*, CIV-05-0875-F, 2006 WL 3227903, at *2 (W.D. Okla. Nov. 3, 2006). The Standard Provision, which the Court has already found should be incorporated into the Dealer Agreement, included a choice of law clause establishing that Oklahoma law should govern the parties' rights and duties. Because defendant has not shown the law of the chosen state would be contrary to a fundamental policy of the State of Oklahoma, the Court applies Oklahoma law.

9

that it is authorized under Oklahoma law and the Dealer Agreement to not renew the contract without cause, or in the alternative, did not renew the contract for cause and, thus, is not liable. Defendant vehemently disagrees. This disagreement affects plaintiff's potential current liability to defendant. The Court, thus, finds there is an actual case or controversy at issue present in this case. The Court also finds that whether plaintiff had cause is still at issue. However, the Court finds that plaintiff's request for declaratory relief under (b) should be dismissed because the Act clearly requires that a decision of non-renewal must be for cause. In addition, the Act prohibits plaintiff from requiring defendant to assent to a waiver of liability under the Act. Thus, the language in the Dealer Agreement that attempts to waive this right is a violation of the express provision of the business code and, consequently, amounts to an unlawful provision that is unenforceable under Oklahoma law.[8] Accordingly, the Court dismisses plaintiff's request for declaratory relief under (b) and allows this case to proceed on plaintiff's requests for declaratory relief under (a)[9] and (c).

V.   Discretion to Exercise Jurisdiction

Defendant moves the Court, in the alternative, to decline to exercise its remedial powers under the Declaratory Judgment Act. A court may decline to exercise its jurisdiction under the Act after considering several factors including:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*;' [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

---

[8] This conclusion is further re-enforced by the current provision in the Act, although not in existence then and, thus, inapplicable to the Dealer Agreement signed in 2010, which adds the language that an attempt to waive liability under the act shall be "void". Okla. Stat. Ann. tit. 15, § 249 (2013).

[9] The Court notes that, having found that under Oklahoma law plaintiff may only non-renew for cause and that the Dealer Agreement provision allowing for non-renewal without cause is unenforceable, plaintiff's request for declaratory relief under (a) will mostly likely overlap with plaintiff's request for relief under (c).

*St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

> It is recognized that "where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court." *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972) . . . . According to the Tenth Circuit, in the context of a declaratory judgment action, "[a] district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction." *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga.*, No. 98-4098, 1999 WL 682883, at *3 (10th Cir. Sept. 2, 1999).

*Hickey v. O'Connor & Drew, P.C.*, CIV-09-349-C, 2009 WL 2163499, at *1 (W.D. Okla. July 10, 2009) (internal footnote omitted).

Having carefully reviewed the record and the parties' submissions, the Court finds that it should exercise its remedial powers under the Declaratory Judgment Act. The first and second factors clearly favor plaintiff as the declaratory action would settle the controversy of which state law applies, what the parties' rights and obligations are under the Dealership Agreement and the applicable state law, and whether the parties carried out their respective obligations. Although not quite clear cut, the third factor slightly favors defendant as it appears from the record that before plaintiff filed this action, both parties disputed their rights and liabilities under the Dealership Agreement, both parties retained lawyers to address the dispute, and the nature of the correspondence letters between the parties, when all viewed together, indicate that litigation was brewing. The fourth and fifth factors favor plaintiff as the Texas court has already transferred defendant's second filed related suit to this Court. Thus, both cases are now pending before this Court, and as such, based on these facts and the Court's findings set forth above, the Court finds that there is no alternative remedy which is better or more effective. The Court is also not convinced that use of a declaratory action under these facts would increase friction between our federal and

state courts and improperly encroach upon state jurisdiction. Accordingly, after carefully weighing the listed factors, the Court denies defendant's request.

VI.  Conclusion

Accordingly, the Court DENIES in part and GRANTS in part Defendant's Motion to Dismiss Plaintiff's Original Complaint Pursuant to FRCP 12(B)(2) & (3) & (6) and 12(C) [docket no. 10] as follows:

(1) Defendant's motion is DENIED as it pertains to its personal jurisdiction and venue challenges. Defendant's motion is also DENIED as it pertains to plaintiff's request for declaratory relief under (a) and (c). Lastly, the Court DENIES defendant's request that the Court declines to exercise its remedial powers under the Declaratory Judgment Act on alternative grounds.

(2) Defendant's Motion is GRANTED as it pertains to plaintiff's request for declaratory relief under (b)[10].

**IT IS SO ORDERED this 1st day of May, 2014.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff's declaratory relief request under b states: "Adjudge and declare that [plaintiff] may lawfully not renew the terms of the Dealer Agreement without cause and that such non-renewal is in compliance with the terms of the Dealer Agreement and Oklahoma law [.]" Compl. 6-7.